# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-3753

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa. |
| James Lindquist, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 22, 2005
Filed: August 31, 2005

_____

Before MELLOY, HEANEY and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

James Lindquist pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). He appeals the district court's finding that his illegal possession of a firearm occurred subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense. U.S. Sentencing Guidelines Manual § 2K2.1(a)(2) (2003). He also appeals the district court's finding that he illegally possessed the firearm in connection with another felony offense. U.S.S.G. § 2K2.1(b)(5). Finally, he challenges the propriety of his

sentence based on *United States v. Booker*, 125 S.Ct. 738 (2005). We affirm in part, reverse in part, vacate the sentence and remand the case for resentencing.

## I.    BACKGROUND

James Lindquist pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court calculated Lindquist's base offense level to be 24 after it found that he had sustained at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 2K2.1(a)(2). The first predicate conviction, which is uncontested, was for a controlled substance offense. The second predicate conviction was based alternatively on Lindquist's Iowa conviction for operating a vehicle without the owner's consent or his Iowa conviction for third degree burglary of a motor vehicle. Over Lindquist's objection, the district court concluded that either of these convictions sufficed for purposes of § 2K2.1(a).

The district court then increased Lindquist's offense level by four levels because he illegally possessed the firearm in connection with another felony offense. U.S.S.G. § 2K2.1(b)(5). Again over Lindquist's objection, the district court found that Lindquist possessed the firearm in connection with violating Iowa Code § 724.16, which prohibits acquiring ownership of a handgun without a valid annual permit to acquire handguns. Finally, the district court reduced Lindquist's offense level by three levels because of his acceptance of responsibility. U.S.S.G. § 3E1.1. With a total offense level of 25, a criminal history category of VI, and a statutory maximum sentence of 10 years, the district court calculated a sentencing range of 110 to 120 months.[1] The district court then sentenced Lindquist to 110 months'

---

[1]The guidelines range for a defendant such as Lindquist with a total offense level of 25 and a criminal history category of VI is 110 to 137 months. However, because the statutory maximum sentence for a violation of § 922(g) is 10 years, 18 U.S.C. § 924(a)(2), Lindquist's effective guidelines range was 110 to 120 months.

imprisonment based on a mandatory application of the guidelines and announced an alternative sentence of 110 months' imprisonment based on its discretion after considering the factors set forth in 18 U.S.C. § 3553(a). On appeal, Lindquist challenges the district court's categorization of operating a vehicle without the owner's consent and third degree burglary as crimes of violence for purposes of § 2K2.1(a)(2) and its application of the four-level enhancement under § 2K2.1(b)(5). Lindquist also argues that his sentence violates the Sixth Amendment.

## II.    DISCUSSION

The proper application of the sentencing guidelines remains the critical starting point for the imposition of a reasonable sentence based on the factors of 18 U.S.C. § 3553(a). *United States v. Mashek*, 406 F.3d 1012, 1016-17 & n.4 (8th Cir. 2005). Under the first step of the *Mashek* two-step analysis, we continue to review a challenge to the district court's interpretation and application of the guidelines de novo and its findings of facts for clear error. *Id.* at 1017. Our de novo review of the application of the guidelines includes the legal question of whether a prior conviction constitutes a crime of violence as defined by U.S.S.G. § 4B1.2. *United States v. Johnson*, No. 04-1839, slip op. at 3 (8th Cir. Aug. 17, 2005). "If the sentence was imposed as the result of an incorrect application of the guidelines, we will remand for resentencing as required by 18 U.S.C. § 3742(f)(1) without reaching the reasonableness of the resulting sentence in light of § 3553(a)." *Mashek*, 406 F.3d at 1017.

Lindquist first challenges the district court's calculation of his base offense level pursuant to § 2K2.1(a)(2). A defendant sentenced under § 2K2.1 faces a base offense level of 24 if he committed the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 2K2.1(a)(2). Since Lindquist has a prior controlled substance conviction, the issue on appeal is whether a conviction for either operating a vehicle

without the owner's consent or third degree burglary of a vehicle qualifies as a crime of violence as defined by § 4B1.2. In light of the Court's recent decision in *Johnson*, which held that the Missouri offense of tampering with an automobile by operation is a crime of violence, we affirm the district court's holding that the Iowa aggravated misdemeanor offense of operating an automobile without the owner's consent constitutes a crime of violence.[2] *See Johnson*, No. 04-1839, slip op. at 7-11.

The commentary to § 2K2.1 directs the district court to the definition of crime of violence found in § 4B1.2. U.S.S.G. § 2K2.1 cmt. n.5. There, a prior conviction may qualify as a crime of violence if it is an "offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). The guidelines definition of "crime of violence" found in § 4B1.2 is also viewed as interchangeable with the statutory definition of "violent felony" found in 18 U.S.C. § 924(e). *United States v. Johnson*, 326 F.3d 934, 936 (8th Cir. 2003) ("The definitions of 'violent felony' and 'crime of violence' are almost identical[.]"). Therefore, in determining whether a defendant has committed a predicate crime of violence for purposes of § 2K2.1(a), we are bound by our case law that is related to both crimes of violence under § 4B1.2 and violent felonies under § 924(e). *See United States v. Sprouse*, 394 F.3d 578, 580 (8th Cir. 2005) ("Because the definitions of crime of violence and violent felony are identical, the same analysis applies in determining whether [a defendant's] convictions fall within the conduct defined.").

---

[2]For purposes of § 2K2.1, a felony conviction means "a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." U.S.S.G. § 2K2.1, cmt n.1. Therefore, an aggravated misdemeanor, which is punishable for a term not exceeding two years, Iowa Code § 903.1(b)(2), qualifies as a felony conviction.

The Missouri offense of tampering by operation, in violation of Mo. Rev. Stat. § 569.080.1(2), is a crime of violence as defined by § 4B1.2(a)(2). *Johnson*, No. 04-1839, slip op. at 7-11. A person commits the offense of tampering by operation in the first degree if he knowingly and unlawfully operates an automobile without the consent of the owner. Mo. Rev. Stat. § 569.080.1(2). "The Missouri offenses of 'tampering by operation' [Mo. Rev. Stat. § 569.080.1(2)] and 'automobile theft' [Mo. Rev. Stat. § 570.030.1] differ only with respect to the permanence of the offender's intent to deprive the owner of possession." *Johnson*, No.04-1839, slip op. at 9-10; *see also Peiffer v. State*, 88 S.W.3d 439, 444 (Mo. banc 2002) (per curiam) (holding that tampering by possession is the lesser included offense of automobile theft for purposes of double jeopardy). By comparison, a person commits the Iowa offense of operating a vehicle without the owner's consent when he "take[s] possession or control of . . . any self-propelled vehicle . . . without the consent of the owner of such, but without the intent to permanently deprive the owner thereof." Iowa Code § 714.7; *see also State v. Hawkins*, 203 N.W.2d 555 (Iowa 1973) (holding that the offense of operating a vehicle without the owner's consent is the lesser-included offense of automobile theft). Though "tampering by operation" may not sound exactly like "operating a vehicle without the owner's consent," the Missouri and Iowa offenses proscribe the same conduct and contain essentially the same elements. Therefore, because a violation of § 714.7 involves the same serious risks of physical injury identified in *Johnson* and *United States v. Sun Bear*, 307 F.3d 747, 752-53 (8th Cir. 2002), we affirm the district court's holding that operating a vehicle without the owner's consent is a crime of violence as defined by § 4B1.2. Accordingly, we need not reach the question of whether third degree burglary is a crime of violence.[3]

---

[3]Lindquist also argues that the district court violated the Sixth Amendment when it found facts necessary to categorize § 714.7 as a crime of violence. We have consistently rejected the applicability of *Booker* to the fact of a prior conviction, *see, e.g., United States v. Paz*, 411 F.3d 906, 909 (8th Cir. 2005), and to the legal determination of whether a prior conviction may be categorized as a crime of violence, *see, e.g., United States v. Johnson*, 411 F.3d 928, 931-32 (8th Cir. 2005).

Lindquist also challenges the district court's application of § 2K2.1(b)(5), which requires a four-level enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5). He argues that his failure to obtain a valid annual permit to acquire handguns, in violation of Iowa Code § 724.16, is an offense for "firearms possession or trafficking" that is specifically excluded from the term "another felony offense" as used in § 2K2.1(b)(5). *See* U.S.S.G. §2K2.1, cmt. n.18. We have previously interpreted the exclusions to "another felony" narrowly, generally limiting them to the types of offenses enumerated in the application note to § 2K2.1. *United States v. Kenney*, 283 F.3d 934, 937 (8th Cir. 2002); *see also United States v. Lloyd*, 361 F.3d 197, 201 (3d Cir. 2004) ("[R]egardless of the interpretation given to the word 'another' in 2K2.1(b)(5), 'firearms possession or trafficking offenses' are categorically removed from the set of crimes that may constitute 'another felony offense.'"). In the context of this appeal, an offense falls within the ambit of "firearms trafficking" when it involves illegal commercial activity involving firearms. *United States v. Boumelhem*, 339 F.3d 414, 427-28 (6th Cir. 2003) (involving the transportation of firearms); *see also United States v. English*, 329 F.3d 615, 616-617 (8th Cir. 2003) (reversing imposition of § 2K2.1(b)(5) where the "other felony offense" was the sale of firearms). If an offense is excluded from consideration under § 2K2.1(b)(5), we need not consider whether the firearm was possessed in connection with the underlying conviction. *See United States v. Blount*, 337 F.3d 404, 406-07 (4th Cir. 2003) (determining whether § 2K2.1(b)(5) applies requires the court to consider whether the underlying offense constitutes "another felony offense" and, if so, whether the firearm was possessed "in connection with" the underlying offense).

Indeed, in both *Booker* and *Shepard v. United States*, 125 S.Ct. 1254 (2005), the Supreme Court reaffirmed the ability of the sentencing court to take notice of a defendant's criminal history and, as a matter of law, determine whether any prior conviction is properly categorized as a crime of violence. *See United States v. Marcussen*, 403 F.3d 982, 984 (8th Cir. 2005).

At sentencing, the district court found that Lindquist illegally possessed a handgun in connection with the aggravated misdemeanor of acquiring the handgun without a valid annual permit to acquire handguns. *See* Iowa Code § 724.16 ("[A] person who acquires ownership of a pistol or revolver without a valid annual permit to acquire pistols or revolvers . . . is guilty of an aggravated misdemeanor."). This is the sort of firearms-trafficking offense that is specifically excluded from consideration as "another felony" under § 2K2.1(b)(5). Before an Iowan can legally acquire ownership of a handgun, he must either obtain a valid annual permit to acquire handguns or meet one of the exceptions found in Iowa Code § 724.15(2). *See* Iowa Code § 724.15(1) ("Any person who acquires ownership of any pistol or revolver shall first obtain an annual permit."). A valid annual permit is not necessary for each handgun purchased, but rather is a license to purchase legally handguns in Iowa. Iowa Code § 724.15(3); *see* 1977-78 Op. Atty Gen. Iowa 502. Certain groups of individuals, such as those with a prior felony conviction, are statutorily prohibited from acquiring a valid annual permit, § 724.15(1)(b), and, therefore, are unable legally to acquire ownership of a handgun, § 724.16. It follows that Lindquist, a prohibited person under § 724.15(1)(b), engaged in illegal commercial activity when he illegally acquired ownership of a handgun, in violation of § 724.16.[4]

Even if we were to read § 724.16 as an offense not involving firearms trafficking, we would still be compelled to reach the same conclusion. This is because Lindquist's violation of § 724.16 involved essentially the same conduct as his conviction for being a felon in possession of a firearm. *See Lloyd*, 361 F.3d at 200 ("[T]he use in § 2K2.1(b)(5) of the phrase 'another felony offense' – as opposed to 'any felony offense' – represents an attempt by the drafters of the Sentencing Guidelines to avoid the 'double counting' of certain elements of criminal activity

---

[4]Iowa Code § 724.16A prohibits the trafficking of stolen firearms. A person traffics in stolen firearms when he "knowingly transfers or acquires possession . . . of a stolen firearm." Iowa Code § 724.16A. By comparison, Lindquist violated § 724.16 by acquiring ownership in a firearm that was not stolen. *See infra* n.5.

already incorporated into the base offense level."). As a person with a prior felony conviction, Lindquist was statutorily prohibited from legally acquiring ownership of the handgun. Iowa Code § 724.15(1)(b).[5] Further, Lindquist's possession of the illegally acquired firearm violated 18 U.S.C. § 922(g)(1). In other words, because of his prior felony conviction, Lindquist could not legally acquire the handgun, § 724.16, much less legally possess the handgun, § 922(g)(1). "[I]t would be unreasonable, and hence presumably contrary to the Commission's intent, to allow the 'additional felony' to be an offense that the defendant has to commit, in every case, in order to commit the underlying offense." *English*, 329 F.3d at 618. Unlawfully acquiring a handgun, by whatever name it is called, is essentially accounted for in the calculation of Lindquist's base offense level under § 2K2.1. *Accord United States v. Szakacs*, 212 F.3d 344, 350-51 (7th Cir. 2000) ("Because almost every weapons crime could also be charged as a state law offense, [the district court's] reading of the guideline would lead to a routine four-level enhancement and defeat the purpose behind the structure to the Guidelines."). Therefore, the district court erroneously applied the four-level enhancement in § 2K2.1(b)(5) to Lindquist's acquisition of ownership of a handgun without a valid annual permit to acquire handguns.

We need not remand the case, however, if the error in the application of the guidelines was harmless, such as where the district court would have reached the

---

[5]It is noteworthy that, under Iowa law, ownership of a firearm generally implies constructive possession of that firearm. *See Scott v. State*, 666 N.W.2d 619, 2003 Iowa App. LEXIS 451, at *8, 2003 WL 21229785, at *2 (Iowa App. May 29, 2003) (unpub.) (quoting II Iowa Crim. Jury Instructions 2400.7 (1990) for the proposition that ownership of a firearm means "dominion and control" over that firearm); *State v. Bash*, 670 N.W.2d 135, 137-38 (Iowa 2003) (noting that the exercise of dominion and control over contraband is sufficient to establish constructive possession); *accord United States v. Maxwell*, 363 F.3d 815, 818 (8th Cir. 2004) ("Constructive possession of the firearm is established if the person has . . . control, *ownership*, or dominion over the firearm itself." (emphasis added)).

same guidelines range absent the error. *See United States v. Hadash*, 408 F.3d 1080, 1082 (8th Cir. 2005); *see also Mashek*, 406 F.3d at 1017. Unlike *Hadash*, where the district court's erroneous application of a § 2K2.1(b)(2) reduction was harmless in light of the district court's alternative § 5K2.0 departure to the same guidelines range, *Hadash*, 408 F.3d at 1083, the error in this case has resulted in a significantly higher sentencing range. Indeed, the four-level enhancement under § 2K2.1(b)(5) erroneously produced a guidelines range of 110 to 120 months, rather than the correct guidelines range of 70 to 87 months. After a thorough review of the record, we find that the error was not harmless.

The district court correctly found that the Iowa offense of operating a vehicle without the owner's consent, in violation of Iowa Code § 724.16, is a crime of violence for purposes of § 2K2.1(a)(1). However, the district court imposed Lindquist's sentence as a result of an incorrect application of § 2K2.1(b)(5). Therefore, we remand the case for resentencing based on a proper application of the advisory guidelines. *Mashek*, 406 F.3d at 1015 (noting that 18 U.S.C. § 3742(f)(1) continues to require remand where the district court imposed a sentence based on an incorrect application of the guidelines). Further, because we remand for resentencing, we need not address Lindquist's challenge to the district court's application of mandatory guidelines. *See United States v. Borer*, 412 F.3d 987, 995 (8th Cir. 2005) ("Because this case must be remanded for resentencing due to an incorrect application of the guidelines, we conclude that the district court also should resentence [the defendant] in light of *Booker*.").

## III.   CONCLUSION

For the foregoing reasons, we vacate the sentence and remand the case for resentencing consistent with this opinion and the Supreme Court's opinion in *Booker*.

HEANEY, Circuit Judge, concurring.

I concur in the majority opinion, but write separately on the issue of whether Lindquist's criminal history includes two prior crimes of violence. The majority, bound by our precedent, finds that Lindquist's conviction for operating a motor vehicle without the owner's consent is a crime of violence. I restate my view that our circuit "has far too broad a conception of what the guidelines mean by stating that violent crimes include 'conduct that presents a serious potential risk of physical injury to another.'" *United States v. Mohr*, 407 F.3d 898, 904 (8th Cir. 2005) (Heaney, J., concurring) (quoting USSG § 4B1.2(a)(2)).

The district court increased Lindquist's base offense level because he had prior violent-crime convictions. Those Iowa state court convictions resulted from joyriding on an all-terrain vehicle before abandoning it in a field (operating a motor vehicle without the owner's consent), and waiting in a car while Lindquist's friend opened an unlocked pickup truck door and stole its stereo (third-degree burglary). It conflicts with the very concept of a crime of violence to include these offenses in that category. "Certainly, the risk of physical injury exists in nearly every felony. The guidelines, however, focus on whether the risk is a serious one, not just an abstract possibility." *Mohr*, 407 F.3d at 904; *see also United States v. Sun Bear*, 307 F.3d 747, 755 (8th Cir. 2002) (Melloy, J., dissenting) ("All felons fear apprehension in the midst of, and following, their criminal conduct, and all may act recklessly when attempting to evade capture.").

The purpose of crimes-of-violence enhancements is to treat violent criminal history more seriously than non-violent criminal history. It is not hard to conceive scenarios in which non-violent felony crimes could become violent, but, in my view, we ought not trivialize this guideline section's purpose by expanding the category too broadly. Here, the result is that James Lindquist's sentence is increased substantially because of the "violent felony" of joyriding on a recreational vehicle.

The majority opinion remands Lindquist's case for resentencing due to an erroneous guidelines calculation, and I agree with that result. As the majority notes, the district court is now presented with the opportunity to resentence Lindquist under the advisory guidelines regime. We are not presented with the issue of whether a guidelines sentence for Lindquist would be unreasonable.[6] With the increased latitude *Booker* bestowed on a district court's determination of the ultimate sentence, the district court in this case should consider whether a guidelines sentence would further the statutory sentencing goals of 18 U.S.C. § 3553(a).

_____

[6]A panel of our court recently held that a guidelines sentence "is generally indicative of reasonableness." *United States v. Shannon*, 414 F.3d 921, 924 (8th Cir. 2005). I do not believe the appropriately calculated guidelines range is to be given any more weight than any other factor laid out in 18 U.S.C. § 3553(a). *See United States v. Booker*, 125 S. Ct. 738, 757 (2005) (modifying the Federal Sentencing Act to require district courts to consult the guidelines *as well as* the other § 3553(a) factors). While we are not faced with the issue here, a defendant whose guidelines sentence was increased significantly solely due to the characterization of non-violent felonies as violent crimes could make a persuasive argument that a sentence within the guidelines was nonetheless unreasonable in view of § 3553(a)'s other factors.