# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1697

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Eric Curtis Chapman, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 16, 2009
Filed: August 4, 2010

_____

Before BYE, BEAM, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Eric Curtis Chapman pled guilty to receipt of stolen firearms, unlawful possession of a firearm as a previously convicted felon, and unlawful possession of ammunition as a previously convicted felon. The district court[1] sentenced Chapman to 77 months' imprisonment. Chapman appeals his sentence, contending that the district court improperly applied a specific offense characteristic under the advisory

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

sentencing guidelines for possession of a firearm in connection with another felony offense. We affirm.

## I.

In July 2008, over the course of two different occasions, Patrick Hines stole a total of four firearms from a sporting goods store in Fort Dodge, Iowa. Chapman's co-defendant, Richard Ayala, accompanied Hines for one of the thefts. Chapman learned within days of the thefts that Hines had stolen the four firearms. The combined value of the firearms was $3449.96.

Later that month, Chapman and Ayala stole the four stolen firearms from Hines. According to undisputed portions of the presentence investigation report ("PSR"), Ayala arranged a meeting in which Hines could trade the firearms to Chapman for drugs or money or both. When Hines parked his vehicle down the street from Ayala's residence, a female associate of Ayala's took two of the firearms from the vehicle.

Shortly thereafter, Chapman and Ayala asked Kenisha Richardson, Hines's girlfriend, for help in stealing the second set of firearms. When she declined, Ayala arranged for Hines to transfer two firearms to Chapman, on the understanding that Hines would later receive one pound of marijuana from Chapman's fictitious "boss" in return for the firearms. This ruse allowed Chapman to acquire possession of the firearms.

After stealing the firearms from Hines, Chapman stored and concealed the firearms in a black suitcase at the residence of Sherri Wahome, his girlfriend. In the meantime, Ayala attempted to find a buyer for the firearms. On Ayala's suggestion, Chapman purchased large-capacity ammunition magazines for each of the firearms.

Law enforcement officers discovered the stolen firearm before Chapman and Ayala could sell them.  In a search during September 2008, officers found a box containing Winchester .25 caliber ammunition at a residence that Chapman shared with another person.  Chapman acknowledged in a police interview that the ammunition belonged to him.  In October 2008, officers seized the four stolen firearms inside and adjacent to the black suitcase at Wahome's residence.  Wahome told police that Chapman had brought the suitcase into her residence.

A grand jury returned a five-count indictment against Chapman and Ayala; three counts named Chapman as defendant.  Count 1 charged Chapman with receipt of stolen firearms, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2).  Counts 4 and 5 charged Chapman with unlawful possession of a firearm as a previously convicted felon and unlawful possession of ammunition as a previously convicted felon, respectively, both in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Chapman pled guilty to all three counts, and the district court sentenced him to 77 months' imprisonment.  The district court determined Chapman's base offense level under USSG § 2K2.1(a)(3).  After finding that Chapman committed a felony theft of property exceeding $1000 in value under Iowa law when he and Ayala stole the firearms from Hines, *see* Iowa Code § 714.2(2), the district court applied a four-level specific offense characteristic pursuant to USSG § 2K2.1(b)(6), because Chapman "used or possessed any firearm or ammunition in connection with another felony offense."  The court explained that Chapman did not merely receive the property that Hines had stolen, but that he was also responsible for stealing the stolen firearms from Hines.

The court ultimately calculated an advisory sentencing range of 87 to 108 months' imprisonment.  The government then moved to reduce Chapman's sentence pursuant to USSG § 5K1.1, based on his provision of substantial assistance.  The court

granted the motion and reduced the sentence by ten percent from the bottom of the advisory range, resulting in a final sentence of 77 months' imprisonment.

## II.

Chapman argues on appeal that the district court committed procedural error in calculating the advisory guideline range, *see Gall v. United States*, 552 U.S. 38, 51 (2007), because the court engaged in impermissible "double counting" when it applied § 2K2.1(b)(6). Generally speaking, "[d]ouble counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines," *United States v. Hipenbecker*, 115 F.3d 581, 583 (8th Cir. 1997) (internal quotation omitted), but double counting is permissible if the Sentencing Commission so intended and each guideline section furthers an independent purpose of sentencing. *Id.* Chapman argues that the calculation of the base offense level for Count 1, which alleged that he received stolen firearms, already accounted for the theft from Hines, and that it was therefore error to count that theft again by applying the four-level enhancement under § 2K2.1(b)(6). We review the district court's application of the guidelines and the double-counting question *de novo*. *Id.*

The disputed specific offense characteristic directs the court to increase the defendant's offense level by four if he "used or possessed any firearm or ammunition in connection with another felony offense." USSG § 2K2.1(b)(6). The commentary defines "another felony offense" as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." *Id.* § 2K2.1, comment. (n.14(C)). In other words, if the "other felony offense" is *not* "the explosive or firearms possession or trafficking offense," then it may be the basis for application of the specific offense characteristic.

In *United States v. English*, 329 F.3d 615 (8th Cir. 2003), this court concluded that the "firearms possession" offenses described in the commentary do not include all offenses in which the underlying conduct involved firearms possession, but rather are limited to "offenses that have, as an element, possession of a firearm." *Id.* at 617. The court thus held that the offense of felony theft under Iowa Code § 714.1(4) was "another felony offense," because "[t]here is nothing about the theft offense that necessarily has anything to do with firearms." *Id.* at 618. This was so even though the theft offense in that particular case was based on the possession of stolen firearms, and the defendant's offense of conviction was unlawful possession of those same firearms as a previously convicted felon under 18 U.S.C. § 922(g). *English* therefore supports the district court's determination that Chapman's felony theft offense, which involved the theft of the stolen firearms from Hines, was "another felony offense" for purposes of § 2K2.1(b)(6).

The court in *English* did allow that "it would be unreasonable, and hence presumably contrary to the Commission's intent, to allow the 'additional felony' to be an offense that the defendant has to commit, in every case, in order to commit the underlying offense." 329 F.3d at 618. Chapman raises a similar point, arguing that because he pled guilty to unlawful receipt of firearms, knowing or having reasonable cause to believe that they were stolen, 18 U.S.C. § 922(j), the district court erred by counting his commission of felony theft of those same firearms under Iowa law as "another felony offense." In *English*, however, we rejected a comparable argument on the ground that the Iowa felony theft statute includes a value element: the stolen property must have a value of over $1000. Iowa Code § 714.2(2). Therefore, the *English* court reasoned, a felon with a stolen gun will not necessarily violate the Iowa statute, because the stolen gun might be worth only $1000 or less. 329 F.3d at 618. Chapman's argument fails for the same reason. A knowing recipient of stolen firearms in violation of § 922(j), like a felon in possession of stolen firearms, will not necessarily violate the Iowa felony theft statute, because the federal statute does not require value in excess of $1000.

In this case, moreover, Chapman also stands convicted of violating § 922(g) as a felon in possession of a firearm. Due to the "grouping rules" of USSG § 3D1.2, the conviction under § 922(j) resulted in no incremental punishment under the advisory guidelines. PSR ¶ 32. *English* establishes that the four-level enhancement for felony theft is appropriate for a defendant convicted under § 922(g), even when the firearms possessed unlawfully are also stolen. Nothing in a general presumption against "double counting" warrants allowing Chapman to avoid the enhancement approved in *English* because he sustained an *additional* conviction, under § 922(j), for which the guidelines recommended no additional punishment. *See United States v. Young*, 413 F.3d 727, 734 (8th Cir. 2005).

*       *       *

For these reasons, we conclude that the district court committed no procedural error. The judgment of the district court is affirmed.

_____